## McKISSICK *v.* McKISSICK.

(174 Pac. 721; 184 Pac. 272.)

**Appeal and Error—Undertaking—Void Service.**

1. Where appellant's attorney attempted to serve the undertaking upon respondent's attorney by leaving a copy at his supposed residence which in fact was not his residence, the service was void.

**Appeal and Error—Undertaking—Void Service—Mistake.**

2. Where appellant's attorney in good faith attempted to serve the undertaking upon respondent's attorney by leaving a copy at his supposed residence, but failed to make good service because latter did not in fact live in such residence, the court, under Section 550, subdivision 4, L. O. L., may permit service to be made on such terms as may be just.

**Divorce—Decisions Reviewable—Order Modifying Decree Awarding Custody of Infants.**

3. An order, though discretionary, granting or refusing to grant a change in the custody of infants, is appealable.

### ON THE MERITS.

**Divorce—Order Refusing Modification of Decree as to Custody of Child Reviewable.**

4. Order refusing motion to modify decree as to custody of child, necessarily based on matters occurring after divorce decree, which under Section 756, L. O. L., is conclusive as to matters occurring before its rendition, is reviewable.

**Divorce—Party Seeking Modification of Decree as to Custody of Child has Burden of Proof.**

5. The defeated party in divorce seeking modification of decree as to custody of child has the burden of showing something by reason of which the established status should be disturbed.

**Divorce—In Awarding Custody of Children Their Welfare Paramount.**

6. It is the cardinal principle in awarding custody of children of divorced persons that the interest and welfare of the children are paramount to the rights and privileges of the parents.

**Divorce—On Custody Awarded Mother, Placing Children in Home With Grandparents Proper.**

7. The mother to whom decree of divorce awards custody of child is within her rights and duty in furnishing it with a suitable home and surroundings with her parents; she finding it necessary to take employment elsewhere to support herself.

**Divorce—Modification of Decree Awarding Custody of Children to Mother Properly Denied.**

8. The motion of divorced father to modify decree awarding custody of child to its mother is properly denied; he not showing that mother was unfit to have the care of it, or that its condition would be improved over its present surroundings.

From Multnomah: ROBERT G. MORROW, Judge.

On motion to dismiss appeal.

DENIED CONDITIONALLY.

*Mr. J. Le Roy Smith,* for the motion.

*Mr. L. G. English* and *Mr. H. L. Ganoe, contra.*

McBRIDE, C. J.—This is a motion to dismiss an appeal, the alleged grounds thereof being (1) that there was no service of a copy of the undertaking upon the respondent, and (2) that the order appealed from was not an appealable order, being a matter wholly within the discretion of the trial court.

It appears from the record that upon the trial and final disposition of a divorce suit begun by plaintiff against the defendant, the court awarded the custody of a minor child of the parties to the plaintiff. Subsequently, defendant applied to the court for a modification of that portion of the decree giving the mother the custody of the child. His application being denied, he appealed to this court. Being unable to find plaintiff's attorney at his office, defendant attempted to serve the undertaking by leaving a copy at his supposed residence. Plaintiff's attorney did not in fact reside at the place indicated and the service was void. We are of the opinion that the appellant's attorney acted in good faith in attempting to serve the undertaking as recited, and that the case comes fairly within the provisions of Section 550, subdivision 4, L. O. L.; which is as follows:

"From the expiration of the time allowed to except to the sureties in the undertaking, or from the justification thereof if excepted to, the appeal shall be deemed perfected. When a party in good faith gives due notice as hereinabove provided of an appeal from a judgment, order, or decree, and thereafter omits, through mistake, to do any other act (including the filing of an undertaking as provided in this section) necessary to perfect the appeal or to stay proceedings,

the court or judge thereof, or the appellate court, may permit an amendment or performance of such act on such terms as may be just.''

Such is the holding in the case of *Dowell* v. *Bolt,* 45 Or. 89 (75 Pac. 714). In the present case appellant has asked leave to file an additional undertaking. We are of the opinion that an appeal lies from an order of the court granting or refusing to grant a change in the custody of infants: 14 Cyc. 814; *Greenleaf* v. *Greenleaf,* 6 S. D. 348 (61 N. W. 42).

The case of *Pittman* v. *Pittman,* 3 Or. 472, bears by analogy upon the matter here under consideration. In that case the defendant obtained a decree of divorce, which granted her the custody of a minor child and the appeal was from that portion of the decree only. It was held that an appeal would lie. Even if, as contended by respondent here, the order as to the custody of the child was a matter within the sound discretion of the court, that fact would not bar an appeal, as the appellant would still have the right to obtain the jurisdiction of this court as to whether or not such discretion had been abused.

The motion to dismiss will be denied, conditioned that appellant within twenty days from the date of this order, serve and file in this court a sufficient undertaking on appeal. In default of filing such undertaking within the time limited the appeal will be dismissed.

DENIED CONDITIONALLY.

New undertaking filed September 21, 1918.          REPORTER.

Argued September 30, affirmed October 14, 1919.

ON THE MERITS.

(184 Pac. 272.)

Department 1.

On November 7, 1917, at the suit of plaintiff, the Circuit Court of Multnomah County granted her a divorce from the defendant and gave her the care and custody of the minor daughter of the parties until the further order of the court, upon condition that the defendant may have the privilege of visiting the child at reasonable times and places, and with the further provision that he might have the child visit him at Portland, Oregon, with reasonable frequency by providing a safe and proper means of transportation and accommodations while in his care. By the decree he was required to pay to the plaintiff a fixed sum as alimony and, further, to pay fifteen dollars per month until further order of the court, for the maintenance and support of the child. On March 13, 1918, he filed a motion in the Circuit Court for a modification of the decree relieving him from paying any further alimony, costs or attorneys' fees as provided in the decree, and that he be given the care, custody and control of the minor child. On March 30, 1918, the Circuit Court heard the application and denied it. From this order the defendant appeals.                AFFIRMED.

For appellant there was a brief over the names of *Mr. H. L. Ganoe* and *Mr. L. G. English,* with an oral argument by *Mr. Ganoe.*

For respondent there was a brief and an oral argument by *Mr. J. Le Roy Smith.*

BURNETT, J.—4. Notwithstanding the contention of the defendant, this is an appealable order, as held in another feature of this same case reported, *ante,* p. 644 (174 Pac. 721). The court had jurisdiction of the persons and subject matter involved in this suit and rendered a decree respecting the custody of the child. This was final and conclusive as to all matters occurring before the rendition of the decree, for Section 756, L. O. L., speaking of the decree of a court having jurisdiction as aforesaid, says:

"In case of a judgment, decree or order against a specific thing, or in respect to the probate of a will or the administration of the estate of a deceased person, or in respect to the personal, political or legal condition or relation of a particular person, the judgment, decree or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person."

Nevertheless, as stated by Mr. Chief Justice MOORE in *Gibbons* v. *Gibbons*, 75 Or. 500 (147 Pac. 530):

"The welfare of these infants is paramount to the rights of any person. * * The court granting the decree of divorce is authorized to modify it at any time so as to provide for the care, custody and support of the minors, and may impose such burden upon either or both parties to the suit."

5. The motion before us is in the nature of a new proceeding based necessarily upon matters occurring since the former decree. We cannot, in the absence of an appeal, go behind the former adjudication and make gleanings from the evidence upon which the suit was there determined or the custody of the child adjudicated. The court then determined, with the evidence before it, that considering the best interests of the child the mother was the proper custodian and that

she was best fitted for that purpose. If the defendant would procure a new adjudication on that subject, different from the former one, he must assume the burden and show either that the plaintiff is not a suitable custodian of her own child, or that the best interest of the latter requires that its care and custody be given to him. In other words, the burden is upon him to disturb the status established by the original decree.

In his affidavit supporting his motion he says that the plaintiff took the child to Ashland but that he has no knowledge about what disposition was made of it or in whose keeping it has been placed. He then states that about January 1, 1918, the plaintiff returned to Portland and since about the twentieth of that month has been living and cohabiting with one Frank W. Moore, as husband and wife, residing at 358 Thirteenth Street in that city. He alleges upon information and belief that the plaintiff and Moore are husband and wife and that Moore is able to care for and support her. Further deposing on information and belief, he avers that the plaintiff has abandoned the child and has shown by her acts since the filing of the decree that she is not a fit person to have the custody of the child; and, lastly, that he himself is ready, able and willing to support it. He then produces the affidavit of Mrs. Rankin, the keeper of the rooming-house at the address named, to the effect that about January 20, 1918, a man and woman giving the name of Mr. and Mrs. Frank W. Moore and representing themselves to be husband and wife, rented a single room with but one bed and were registered in a book kept by the affiant as a register of all tenants, and that they occupied said room continuously until March 12th. She further relates in substance that on the last-named date someone inquired by telephone for Mrs. Moore, whom

she. called from her room to the telephone; that later in the afternoon three men called and inquired for Mrs. Moore and she let them inspect the register referred to. Then one of the men, who introduced himself as Mr. McKissick, produced two photographs of the woman, which she recognized as pictures of Mrs. Moore.

Douglas Lawson gave his affidavit to. the affect that on March 12th he inquired by telephone for Mrs. Moore and when she came to the instrument speaking, he recognized the voice as that of the plaintiff, Mrs. McKissick. He further states that afterwards on the same date the defendant and he met the plaintiff, whereupon the former addressed her as "Mrs. Moore" and she replied, "I am not Mrs. Moore. I am Mrs. McKissick." He also narrates the circumstance of going to the rooming-house and his conversation, and the exhibition of the photographs as stated.

Another affiant gives a statement about the interview with Mrs. Rankin and the inspection. of the register. There are other affidavits about inquiring of other individuals for the address of Mr. and Mrs. Moore, and information given in answer to such inquiry although not in the presence of the parties. An insurance agent deposes about the application of Frank W. Moore for insurance, representing himself to be a married man, residing at the address of Thirteenth Street.

The plaintiff filed her counter-affidavit, denying categorically that she had ever occupied any room with Moore or cohabited with him at any time or place. She complains that almost continually since they separated, and ever since the divorce, the defendant has followed and annoyed her so that she was compelled to change her place of residence and that on account

of being afraid of him she had some of her fellow-employees accompany her and also had Moore act as her escort on numerous occasions. She says that her friends frequently gave false addresses respecting her residence when he would inquire of them for her. In substance she says the arrangements for the room on Thirteenth Street were made for the purpose of throwing the defendant off her track and that she never gave any other name than McKissick except as a ruse to elude him. She states that the defendant has never inquired concerning the child, has never shown any interest whatever in her and that during all the child's life the plaintiff's parents and herself have had the entire care and custody of the infant. The plaintiff claims that when she came to Portland she did not know how long she would remain, and that owing to her ill health she has not been able to spare the money to bring the child to Portland, and consequently she left her with her father and mother until she could decide what she should do.

Another affiant speaks very highly of the plaintiff's parents and of their ability to take care of the child, whom they have had almost all of her life. She speaks in the warmest terms of the plaintiff's attachment to the child and of the plaintiff's good character.

Moore states that he made the application for insurance at the request of the defendant himself and that it was a fake application. He expresses contrition for his dissimulation in the matter and states that as soon as the plaintiff began her work at the Hazelwood store the defendant began shadowing the place and followed and accosted the plaintiff on the streets, frequently stopping and annoying her, so that to avoid him she often had some of the girls, her fellow-employes, to accompany her. The defendant never re-

ferred to the child or inquired about its welfare.
Moore denies that he ever cohabited with or stayed at
the room of the plaintiff and says that he never knew
her to conduct herself otherwise than as a true and
virtuous woman. He says that for some time from
January 20th he was confined to his home at 427 Sal-
mon Street by an attack of fever. In this he is cor-
roborated by the owner of the Salmon Street address,
who declares that Moore had not resided at any other
address during the time mentioned in the affidavit of
Mrs. Rankin.

Mrs. Rankin supplies an affidavit on behalf of the
plaintiff, denying that she kept a register at her house.
She declares that she supposed that matter had been
stricken from her affidavit which she was asked to sign
on behalf of the defendant; that Moore was on the
premises only a few times after renting the room and
that she knew Mrs. McKissick was ill for some time
while rooming there. This is substantially the show-
ing made in the matter before us.

6. We remember as the cardinal principle that the
best interest and welfare of the child are paramount
to the rights or privileges even of the parents. By
*innuendo* the defendant charges his former wife, the
mother of his child, with unchaste conduct. He does
not pretend to give evidence of any act *in flagrante
delicto*. The landlady, it is true, says that Moore and
a woman represented as his wife occupied her room
from January to March. The effect of that affidavit
is greatly weakened by the subsequent declaration of
the same affiant, denying important statements made
therein. Moreover, both Moore and the plaintiff deny
any meretricious relations between them. The plain-
tiff had divorced the defendant and owed him no duty.

She had a right to keep company with Moore and to receive his legitimate attention. From the weight of the testimony, we conclude that it is much such a case as described by Mr. Justice McBride in *Matthews* v. *Matthews,* 60 Or. 451 (119 Pac. 766), thus:

"It appears that the plaintiff is not an adultress and that she is a woman of good moral character who has been guilty of certain indiscreet conduct which age and experience will no doubt correct."

7. So far as the custody of the child is concerned, the decree has given it to the plaintiff. She is not bound to have it in her arms or by her side continuously. She is within her rights and duty if she provides for it a suitable home and surroundings. There is no dispute that she has done this in leaving the child with its grandparents, who have had the care of it almost its entire life. The defendant, although the affidavits on his side of the case describe him as a clean, moral and truthful gentleman, fit and proper to have the care and custody of his minor child, has not shown that he could do better than to leave it in the care of some other person. It cannot be said that the plaintiff has abandoned the child. Even if the defendant had the little one, it might become necessary to send her to some boarding-school or to place her in some family where she could have the benefit of home surroundings. It seems that the plaintiff found it necessary to take employment to support herself, and it is far better for the interest of the child that it should be with its own people, who know it so well, than to be a burden upon its mother for its personal care, much to the detriment of both mother and child.

8. The defendant, who is the moving party, has not shown that the mother is unfit to have the care of the

child, or that the latter's condition would be improved over its present surroundings.

The court was right in denying the motion and its decree is affirmed.  .  AFFIRMED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.