Motion to dismiss allowed in part November 23, 1943;
argued May 16; reversed June 6, 1944

## NICHOLS *v.* NICHOLS

(143 P. (2d) 663, 149 P. (2d) 572)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*A. W. Norblad,* of Astoria, for the motion.

*Irving C. Allen* and *Chris Schuebel,* both of Seaside, opposed.

LUSK, J. This is a motion to dismiss an appeal.

On August 13, 1942, the court entered a default decree granting a divorce to the plaintiff-respondent Cecil E. Nichols from the defendant-appellant Margaret Nichols and awarding to the appellant, in accordance with the prayer of the complaint, the custody of the three minor children of the parties, with right of visitation to the respondent. On March 29, 1943, respondent filed a motion to modify the decree by awarding him the custody of the children, and on May 26, 1943, after a hearing at which oral testimony was taken, the court entered an order allowing the motion. On June 13, 1943, the appellant filed a motion ''for an order vacating and setting aside the original decree herein and the order modifying said decree and permit-

ting the defendant to file her answer and cross-complaint in this cause." This motion recites that it is "based upon the affidavit of the defendant heretofore filed herein, all of the files and records herein, and upon oral testimony to be presented by the defendant at the hearing of this motion." On July 28, 1943, the appellant filed a motion "for an order to set aside the modified decree heretofore made and entered on the 26th day of May, 1943, for the reason that the modification so made is contrary to law as shown by the record and the memorandum of opinion made and filed in this cause by the court, and that the court committed an error of law in so modifying the original decree heretofore made and entered in this cause." On August 19, 1943, the court entered two orders, one denying the motion, filed June 13, 1943, to vacate the original decree and the order modifying said decree, and the other denying the motion, filed July 28, 1943, to vacate the modified decree on the ground that it was contrary to law. On August 19, 1943, the appellant caused to be served upon counsel for the respondent and filed with the clerk of the court a notice of appeal which reads as follows:

"YOU AND EACH OF YOU will please take notice that the defendant MARGARET NICHOLS does hereby appeal unto the Supreme Court of the State of Oregon, from that certain Order Modifying Decree and the whole thereof, and each and every part thereof, made and entered in the above entitled court and cause, on or about the 26th day of May, 1943, and also does hereby appeal unto the Supreme Court of the State of Oregon, from that certain order and the whole thereof, and each and every part thereof, made and entered in the above entitled court and cause, on or about the 19 day of August, 1943, denying defendant's Motion to Set

Aside the Modified Decree; and also does hereby appeal unto the Supreme Court of the State of Oregon from that certain order and the whole and each and every part thereof, made and entered in the above entitled court and cause on or about the 19 day of August, 1943, denying defendant's Motion to Set Aside and Vacate the Original Decree herein and the Order Modifying said Decree, and permitting the defendant to file her Answer and Cross-Complaint in this cause."

It thus appears that an appeal has been attempted to be taken from four different orders: an order modifying the decree of divorce by awarding custody of the minor children to the respondent; two orders denying separate motions to vacate that order; and an order refusing to vacate the original decree.

■ An order granting or refusing to grant a motion to modify a decree respecting the custody of children of divorced parents, is a final order, and, therefore, appealable. *Sheedy v. Sheedy,* 122 Or. 221, 222, 258 P. 184; *McKissick v. McKissick,* 93 Or. 644, 647, 174 P. 721, 184 P. 272.

■ An order modifying a decree for the custody of children is final and conclusive so long as the conditions then existing remain unchanged. *Wells v. Wells-Crawford,* 120 Or. 557, 563, 251 P. 263, 251 P. 907; *Merges v. Merges,* 94 Or. 246, 253, 186 P. 36; *Bestel v. Bestel,* 153 Or. 100, 107, 44 P. (2d) 1078, 53 P. (2d) 525.

■ Hence, the order of May 26, 1943, granting the respondent's motion to award him the custody of the children was an appealable order, but, as the notice of appeal was not served or filed until August 19, 1943, more than sixty days after the entry of the order sought to be appealed from, this court is without jurisdiction to review that order.

■ The order of August 19, 1943, denying the appellant's motion filed July 28, 1943, to vacate the modifying order of May 26, 1943, is clearly not appealable, because that motion was on its face merely an effort to induce the court to change the May 26th order on the ground that it was erroneous. The motion did not purport to call for a new adjudication based on changed conditions, but it was in the nature of a petition for a rehearing.

■ There remains for consideration the order or orders of August 19, 1943, denying the appellant's motion filed June 13, 1943, to vacate the original decree as well as the modifying order of May 26, 1943, and to permit the appellant to file her answer and cross-complaint in this cause. This motion is said by counsel for the appellant to invoke the remedial provisions of § 1-1007, O. C. L. A., under which the court may "in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect." The motion does not, in terms, refer to any of the grounds for relief from a judgment enumerated in the statute. It is accompanied, however, by the tender of an answer and cross-complaint to the respondent's complaint for a divorce, and is supported by affidavits and the prior records and proceedings in the case, from some of which it may fairly be inferred that the basis of the motion is fraud of the respondent which induced the appellant to allow a default decree of divorce to be entered against her. There is a showing that while the divorce suit was pending the respondent agreed with the appellant that she should have the permanent custody of their

minor children in the event that a decree of divorce should be granted; that the appellant, in reliance upon this agreement, refrained from contesting the divorce suit; and that at the very time the plaintiff made the agreement he intended, at the first favorable opportunity after the divorce decree should be entered, to apply to the court for a modification of the decree granting him the custody of the children. While fraud is not mentioned as one of the grounds for granting relief under § 1-1007, O. C. L. A., fraud practiced in obtaining a judgment, even though not especially enumerated in the statute " 'would generally be available to the injured party on the ground that it had occasioned the rendition of a judgment against him by surprise or mistake, or under circumstances which as to him might well be deemed excusable neglect': 1 Freeman on Judgments, § 111a." *Thompson v. Connell,* 31 Or. 231, 236, 48 P. 467, 65 Am. St. Rep. 818. It is thus apparent that the appellant has invoked the remedy provided in § 1-1007, O. C. L. A., and, since the denial by the court of relief under that section is an appealable order *(Peters v. Dietrich,* 145 Or. 589, 27 P. (2d) 1015), and the notice of appeal from that order was served and filed within the statutory time, we have jurisdiction to determine the single question of whether the circuit court abused its discretion in determining that the decree of divorce was not entered against the appellant through "mistake, inadvertence, surprise, or excusable neglect", within the meaning of those words as used in the statute.

■ We are of the opinion, however, that the alleged fraud or surprise cannot be said to be the basis of the motion to vacate the modifying order of May 26, 1943, which was combined with the motion to vacate the

original decree. The defendant appeared and contested the plaintiff's motion for a modification of the original decree, and we think, therefore, that there is not even a colorable showing that the motion in question brings the appellant within the provisions of § 1-1007, O. C. L. A., but rather that it is a mere attempt to induce the court to vacate the modifying order without any showing of a change in conditions. The order denying the motion to vacate the modifying order, filed June 13, 1943, is, therefore, not an appealable order.

It results that the motion to dismiss the appeal from the order denying the motion to vacate the original decree is denied, but, with respect to the other orders described in the notice of appeal, the motion is granted.

KELLY, J., did not participate in the foregoing opinion.

---

Argued on the merits May 16; reversed June 6, 1944

ON THE MERITS

(149 P. (2d) 572)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK and HAY, Associate Justices.

*Irving C. Allen* and *Chris Schuebel,* both of Seaside, for appellant.

*A. W. Norblad,* of Astoria (Norblad & Norblad, of Astoria, on the brief), for respondent.

BELT, J.

The court having denied the motion to dismiss the appeal from an order refusing to set aside and vacate the original default divorce decree, the cause is now here on the merits.

The sole question is whether the decree entered August 13, 1942, was procured by fraud. It is the contention of the defendant that she was induced not to contest the divorce proceeding, or to make any appearance therein, on account of an agreement had with the plaintiff whereby she should have the permanent custody of the three minor children—Dorothea, a daughter, aged 7 years; Cecil, a son, 4 years; and Linford, a son 2 years—in the event a decree was obtained by him. Defendant charges in substance that plaintiff was not acting in good faith and that, at the time of making such agreement, had no intention of complying therewith but contemplated securing custody of the children by a modification of the decree at the earliest opportunity. Defendant further avers that she relied upon the agreement thus made and refrained from contesting the suit.

In determining whether the circuit court abused its discretion in refusing to vacate the original decree on the ground of fraud, the entire record is before us for consideration. What did the plaintiff have in mind when he agreed that the custody of the children should be awarded to the mother? Was such agreement merely sham and pretense made merely to lull her into a false sense of security? Why did the plaintiff concede that she was a fit and proper person

to have custody of the children when the decree was granted and then, a few months later, endeavor to show she was wholly unworthy to care for them?

In plaintiff's affidavit supporting the motion, on March 29, 1943, to modify the decree by awarding custody of the children to him, he thus explains why he consented to the custody being given to the mother in the original decree:

> "* * * that by *agreement* between the said parties, the decree in this matter gave the care and custody of Dorothea Grace Nichols, Cecil E. Nichols, Jr., and Linford Adelbert Nichols, the minor children of said parties, to the defendant. The reason for the decree giving her the custody of the children grows out of the fact that I was employed in the Civil Service here in Astoria and living a considerable distance from relatives and friends and had absolutely no means of providing ample care for the children at that time. The only hope I had of finding an agreeable home for them was to place them with my sister and her family who live in Seattle, Washington, but I was confronted with the difficulty that if I moved to Seattle before the divorce was granted I would be unable to secure a decree of divorce in Oregon on account of residence requirements. *Consequently, my only recourse was to allow her the custody of the children and then relocate in Seattle and after I had made satisfactory arrangements for the care of the children, to ask the court to modify, change and alter the decree.*" (Italics ours.)

He further avers therein that:

> "If I am allowed custody of my children, I will remove them immediately to the home where I am now living with my sister, her husband and two older children, two boys being 17 and 13."

In addition to plaintiff's affidavit there was also the affidavit of Illene Beymer, 27 years of age, who, at the request of the plaintiff, went to the home of the defendant's mother, Myrtle McKeown—where the children were kept—in order to "get evidence" to support the motion to modify the decree. Miss Beymer, whom, it appears, the plaintiff has now married pending this appeal, made some rather vague and derogatory statements concerning the character of the defendant and her mother.

That plaintiff, at the time of the original decree, contemplated securing custody of the children is clearly shown by the evidence. He immediately endeavored to get evidence against the defendant—going to the extreme of writing, on March 12, 1943, to defendant's brother, Rev. Lowry McKeown, to see if he would not make an affidavit—prepared by plaintiff—to the effect that the children would be better cared for in the home of plaintiff's sister, Mrs. R. F. Isbell, who resided in Seattle, Washington. McKeown refused to sign the affidavit and asserted confidence in the "Christian integrity" of his mother.

As evidencing the plan or scheme of the plaintiff, consider the extensive correspondence between him and his friend Eugene Chadwick, commenced December 15, 1942, wherein he tried unsuccessfully to persuade Chadwick to aid him in obtaining custody of the children. In a letter to Chadwick dated January 13, 1943, plaintiff said his attorney Walter Norblad advised him not to ask for custody of the children in the first instance, and stated that now "Walter gave me no hope at all" to "rescue" the children. Plaintiff, however, was not to be discouraged but recognized, as he said to Chadwick, that "I do need evidence

against her". Plaintiff also submitted a proposed affidavit which Chadwick refused to sign, reflecting upon the character of the defendant. In the letter to Chadwick, dated April 6, 1943, plaintiff renewed his efforts to get custody of the children and stated, *"I am acting according to plans worked out even prior to the divorce."* He further stated therein, "If at any time the mother does not do her duty by the children, she should expect action to be taken against her *regardless of previous arrangements or statements."*

On May 26, 1943, the circuit court, after hearing, entered an order modifying the decree by awarding custody of the children to the plaintiff. It appears from a memorandum opinion that the court deprived the mother of the custody of her minor children—not because she was an immoral person, but upon the grounds: (1) Failure to give the children proper religious training; (2) interference with plaintiff in his right of reasonable visitation. The court further said, "There is no evidence of physical neglect as to feeding or cleanliness, or supervision of play hours, etc., in either environment. * * * The physical environment in which the defendant has been keeping the children is equally as satisfactory and probably no more satisfactory * * *" than that under the proposed arrangement by plaintiff. Defendant failed to file notice of appeal in time from this order of modification and, therefore, the attempted appeal therefrom was dismissed on motion of the plaintiff.

On June 13, 1943, under and by virtue of § 1-1007 O. C. L. A., the defendant filed a motion "for an order vacating and setting aside the original decree herein and the order modifying said decree and permitting the defendant to file her answer and cross complaint

in this cause." In support of this motion the defendant filed a supplemental affidavit setting forth as exhibits the letters from plaintiff to Chadwick. Defendant was not previously aware of the existence of these letters as Chadwick had placed the same with Mr. Allen, of counsel, with instructions not to reveal the contents thereof, as he still hoped for reconciliation between plaintiff and defendant. When convinced, however, that there might be a miscarriage of justice, he consented that the letters be revealed to the court. The court, however, refused to vacate the original decree or the modification thereof.

It is urged that an agreement whereby defendant was to have "permanent custody of the children" is illegal and of no effect, since the court, as a matter of law, has continuing jurisdiction over their welfare until they attain their majority. We think this contention is beside the point as to whether a fraud was perpetrated upon defendant in that she was induced not to contest the divorce proceeding by reason of the agreement that she was to have custody of the children. Apparently she was not particularly concerned about the dissolution of the marriage but she was intensely interested in the disposition of her children.

Believing that fraud has been established and that the circuit court abused its discretion in refusing to set aside the original decree, it follows that the order denying the motion to vacate the decree is reversed and the cause remanded with directions to permit defendant to file her answer and cross complaint. The discretion to be exercised by the court under § 1-1007, O. C. L. A. is, as said in *Peters v. Dietrich*, 145 Or. 589, 27 P. (2d) 1015, "controlled in its execution by fixed legal principles, to be exercised in conformity with the spirit of

the law, in a manner to subserve and not to defeat or impede the ends of substantial justice.'' The original decree being null and void on account of fraud, it also follows that subsequent proceedings had herein are of no force and effect.

There was no participation whatsoever by counsel in the fraudulent scheme of the plaintiff and we completely absolve them from any blame or criticism.

■ Defendant is entitled to costs and disbursements.

---

BAILEY, C. J., and LUSK, J., concur in the result on the ground that the decree of divorce was obtained as the result of a collusive agreement between the parties pursuant to which the defendant refrained from presenting her defense to the suit in consideration of the plaintiff's promise to ask the court to award the custody of the children to the defendant.