Judith Anne KING, Appellant,

v.

Ernest H. KING, Appellee.

No. 1235.

Supreme Court of Alaska.

Nov. 27, 1970.

William G. Ruddy, Robertson, Monagle, Eastaugh, Annis & Bradley, Juneau, for appellant.

Shirley F. Kohls, Gregg, Kohls & Schulz, Juneau, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

CONNOR, Justice.

In a divorce decree entered November 1, 1968, the superior court at Juneau

awarded custody of the female child of the parties, the child then being under two years of age, to appellant, with appellee to have reasonable rights of visitation and temporary custody for one month each summer. The divorce was uncontested. In the early part of 1969, it was arranged through negotiation, both by correspondence and by intermediaries, that the child would stay with appellee at Haines, Alaska, for about two months, commencing February 15, 1969. At that time the child was residing with appellant at Long Beach, California. Appellee went to California, received the child, and took her back to Haines, Alaska.

In March, fearing that she might have difficulty in regaining custody of the child, appellant flew to Haines, Alaska, and demanded immediate return of the child. Appellee refused to comply with this demand. Appellant then went to the Alaska State Troopers and, upon returning to the home of appellee with a state trooper, was unable to find appellee or his family. Appellant then returned to California without the child.

On April 22, 1969, appellee filed a motion for modification of the divorce decree with respect to custody, and a hearing was set for May 9, 1969. At that hearing the court was not able to arrive at a decision, and the hearing was recessed while the parties took depositions of witnesses. The second phase of the hearing occurred on October 31 and November 1, 1969, with testimony given both orally and by deposition. After listening to all of the testimony, which was in sharp conflict concerning the fitness of appellant as a mother, the court did not rule that appellant was unfit as a mother, but did rule that the circumstances of the father, including his remarriage, home setting, apparent financial ability, settled job situation, ownership of land, and other factors, militated in favor of awarding custody of the child to him. Judgment was later entered accordingly. From that judgment appellant brings this appeal.

It is quite plain that the trial court applied our current statute which governs the determination of custody matters in divorce cases. That statute, AS 09.55.205, reads as follows:

> "*Judgments for custody.* In an action for divorce or for legal separation the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any child of the marriage, make an order for the custody of or visitation with the minor child which may seem necessary or proper and may at any time modify or vacate the order. In awarding custody the court is to be guided by the following considerations:
>
> (1) by what appears to be for the best interests of the child and if the child is of a sufficient age and intelligence to form a preference, the court may consider that preference in determining the question;
>
> (2) as between parents adversely claiming the custody neither parent is entitled to it as of right."

In our recent decision in Sheridan v. Sheridan, 466 P.2d 821 (Alaska 1970), we reviewed the development of Alaska doctrine on child custody determinations. Starting with Rhodes v. Rhodes, 370 P.2d 902 (Alaska 1962), and Harding v. Harding, 377 P.2d 378 (Alaska 1962), and ending with the passage in 1968 of the current provisions of AS 09.55.205, there has been a steady course of legal development whereby the best interests of the child are to be the paramount consideration in custody cases, to the exclusion of other criteria such as the doctrine that children of tender years will generally be awarded to the mother when other factors are fairly evenly balanced. As we noted in *Sheridan,* our law now vests a very wide discretion in the trial court to determine where custody shall be placed. (466 P.2d at 824.) We will reverse the determinations of the trial court only where we are convinced that the findings of the trial court are clearly erroneous and the record indicates that an abuse of discretion has occurred.

From a review of the record in the case before us, it is evident that the trial judge carefully weighed all of the testimony and evaluated the relevant factors which entered into his determination to vest custody in the father. It is not necessary to discuss these factors in detail. We are satisfied that the facts in this case were developed in depth and that the court took great care to arrive at a reasoned conclusion concerning the best interests of the child.

Appellant's first point on appeal is that the doctrine of "clean hands" should have barred appellee from seeking a modification of the decree. In this regard appellant argues that the superior court should have declined to take jurisdiction of appellee's motion seeking modification because appellee violated the prior custody award when he took the child from California and subsequently refused to return her to the appellant. The argument is without merit in the context of this case. Fenner v. Bassett, 412 P.2d 318 (Alaska 1966), is first cited in support of the argument, but is inapplicable since we specifically decided that it was not necessary to consider the "clean hands" doctrine in disposing of the case.[1]

A number of cases from other jurisdictions are also cited in support of appellant's contention that the superior court should have applied the "clean hands" doctrine. Each of the cases is quite easily distinguishable from the case under consideration. A number deal with problems of jurisdiction which arise when minor children are taken to other states in violation of the custody order of the state of marital domicile and custody modification is subsequently sought in the state of refuge.[2] Two of the cases concern custody agreements between parents;[3] one deals with

1. In Fenner v. Bassett, 412 P.2d 318 (Alaska 1966), a father had been awarded custody by a California court. Thereafter the mother brought the children to Alaska without permission of the California court and sought custody change in Alaska. We held that the Alaska superior court had jurisdiction but had properly refused to exercise it where there was insufficient allegation of changed circumstances. *Id.* at 323.

2. In State ex rel. Marthens v. Superior Court, 25 Wash.2d 125, 169 P.2d 626 (1946), the court concluded that the Washington trial court had no jurisdiction to modify a California custody decree in a situation where the father had been awarded custody and the mother had brought the children to Washington without leave of the California court. The case was decided on the ground that the Washington court lacked jurisdiction because the children were not "domiciled" in Washington since they had been brought there in violation of a California court order. *Id.* 169 P.2d at 628–630. A similar result was reached in Ex parte Mullins, 26 Wash.2d 419, 174 P.2d 790 (1946). In Cecil v. State, 192 Tenn. 74, 237 S.W.2d 558 (1951), the Tennessee court concluded that the custody decree of a foreign court would be overturned only when a manifest change of circumstances was apparent. The "clean hands" doctrine is not discussed. In Crocker v.

Crocker, 122 Colo. 49, 219 P.2d 311 (1950), the Colorado court held that a father who improperly removed his children from Illinois was in no position to insist that the Colorado court consider his petition to modify the Illinois custody award. In Leathers v. Leathers, 162 Cal. App.2d 768, 328 P.2d 853 (1958), custody had been awarded to the father by an Illinois court after the mother had brought the children to California. The mother thereafter was granted custody pending hearing on habeas corpus brought by the father. The appellate court reversed the lower California court order and discussed the "clean hands" doctrine at some length. The court concluded that California had "concurrent jurisdiction" with Illinois, but refrained from exercising it since the case clearly came within the "clean hands" doctrine. *Id.* 328 P.2d at 856–857.

3. In Loomis v. Loomis, 89 Cal.App.2d 232, 201 P.2d 33, 37 (1948), the wife allowed a default divorce to be entered on the basis of a stipulation giving her custody of the child. When the husband violated the agreement, the court held all issues should be tried on the merits. In Nichols v. Nichols, 174 Or. 390, 149 P.2d 572 (1944), the wife was similarly induced not to contest the divorce decree because of an agreement awarding her custody of the children. The court concluded fraud had been established and vacated

a situation where the petitioner and parent was in contempt of court and the children were illegally taken outside the jurisdiction of the court.[4] One cited case relates to a modification decree sought to be enforced by a parent who had obtained the modification outside of the state of domicile of the children.[5] Not one of the cases relied on by appellant concerns a custody consideration even remotely similar to the situation at bar. Here the court was asked to modify its *own* custody award and all parties were actually before the court when the motion was considered. The exercise of the court's jurisdiction was never questioned below.

Actually, the "clean hands" doctrine is generally considered a device for resolving problems of custody jurisdiction among the states and is most commonly invoked when a court is asked to either enforce or modify a custody decree of a sister state. The doctrine has been explained by one California court:

"It is well settled that our courts will recognize and enforce custody decrees of a sister state without re-examination of their merits regardless of change of conditions when there is misconduct or malfeasance on the part of the parent seeking such re-examination, by invoking the doctrine of 'clean hands.' This misconduct generally consists of defiantly leaving a sister state, usually the marital domicile, with the minor to avoid its jurisdiction and for the purpose of seeking redetermination of the issue in a more favorable forum."[6]

It is obvious that the "clean hands" doctrine serves no purpose in a setting where the court is asked to modify its own custody award as specifically allowed by the statute set out earlier.

Appellant's second point on appeal is that there should have been a showing of "substantial change" in circumstances before the court acted to modify custody. Both parties allude to Houger v. Houger, 449 P.2d 766, 773 (Alaska 1969), where we concluded that the trial judge would have been "justified in modifying * * * custody arrangements only if it had been shown that since the date of entry of the judgment changed facts and circumstances affecting the welfare of the children required modification for the best interests of the children." We observe initially that in *Houger* the custody determination had been made before the present custody statute became effective. Also in *Houger* the motion for custody modification was made immediately after the court's decision in a contested divorce case. In this respect it was tantamount to a motion for a new trial on the custody issue. The facts of the case before us are quite different. Here we have an uncontested divorce and a situation where both parties had remarried by the time that the motion for modification of custody was filed.

The parties to this appeal differ as to whether the new statute eliminates the necessity of showing "substantial change" in circumstances before a court may modify a custody decree. This question merits discussion.

Certainly a court should not alter a previous custody determination without a reasonable basis for concluding that the best interests of the child dictate such a

the decree. In the present case appellant does not directly contend that any such agreement existed.

4. Olson v. Olson, 77 N.D. 444, 43 N.W.2d 689 (1950).

5. Application of Enke, 129 Mont. 353, 287 P.2d 19 (1955), cert. den., Enke v. Baucus, 350 U.S. 923, 76 S.Ct. 212, 100 L.Ed. 808, 350 U.S. 923 (1955). In this case the mother who was awarded custody in California brought the children to Montana with the consent of the father. Ten years later the father obtained a California modification which the Montana court refused to recognize. This case was noted and criticized in Note, Rendering State Cannot Modify Custody Decree Where Child No Longer Its Domiciliary, 56 Colum.L.Rev. 630 (1956).

6. Leathers v. Leathers, 162 Cal.App.2d 768, 328 P.2d 853, 856 (1958).

change. Without some change in circumstance there is no logical basis for a court to alter a determination which has once seriously and finally been made. To do so might well constitute an abuse of discretion. However, as we noted at the outset, both statute and decision make it clear that the paramount consideration is the best interest of the child. The concept of "substantial change" of circumstances is not a limitation on the discretion of the trial court to determine custody according to the best interest of the child. Rather, it may be considered simply a rule of judicial economy designed to discourage discontented parents from continually renewing custody proceedings.

In short, the "substantial change" of circumstances is not an initial obstacle which must be overcome by either party in order to have the court redetermine custody. It is simply one of the factors to be weighed in the balance by the court when a motion for modification of a divorce decree in respect to custody is made.[7] In any event, there was certainly satisfaction of the "substantial change" doctrine here, considering the remarriage of each party and the changed home environment for the child which would be afforded by either party.

■ Appellant contends that the father here was guilty of child stealing and was in contempt of the earlier divorce decree when he refused to return the child to appellant during her trip to Haines in March of 1969. Suffice it to say that in the circumstances of this case, the trial court did not find appellee in serious violation of the earlier decree nor that appellee had committed child stealing. No complaint reflecting this charge is found in the record. The trial court did impose costs against appellee to assure that the expenses incurred by appellant in litigating the custody matter were made good. There may well be cases where the party violating the terms of a decree should be penalized in one mode or another. We do not, however, find that to be the case here.

Nothing in the record before us indicates any abuse of discretion by the trial court or any rash or arbitrary action. We find no reason to disturb the custody award.

The judgment entered below is affirmed.

7. It has been observed by the California Supreme Court that the "change of circumstance" doctrine is not an ironclad rule:
"It is perhaps possible to conceive of a case in which, despite the fact that there was apparently no change of circumstances, nevertheless the welfare of the child might require that the previous order of custody be changed. [Citing case.]" Foster v. Foster, 8 Cal.2d 719, 68 P.2d 719, 723 (1937).