**Ray S. LACY, Appellant,**

v.

**Helen L. LACY, Appellee.**

**No. 2770.**

Supreme Court of Alaska.

Aug. 20, 1976.

Wayne Anthony Ross, Anchorage, for appellant.

Sandra K. Saville of Kay, Christie, Fuld & Saville, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

This appeal arises from the superior court's denial of appellant Ray Lacy's motion for modification of certain custody provisions which were made part of a decree of divorce.

Ray and Helen Lacy were married in 1949. In the course of their marriage two sons were born: Neal, who at the time of the superior court modification hearing was 15 years of age, and Gary, 13 years of

age. In addition, the parties adopted a third son, Linn, who was 16 years of age at the time the hearing took place. In 1968 the parties obtained a decree of divorce from the superior court. This decree awarded Helen Lacy custody of the three boys during the 9-month school term, and Ray Lacy was awarded custody during the 3 summer months.

In 1972 the superior court modified the 1968 decree, awarding full custody of Linn to Ray, and full custody of the younger boys to Helen.[1] With respect to Neal and Gary, the modification order provided that their father would enjoy "reasonable visitation rights", specifically that they would visit Ray Lacy in Alaska for a period of 2 months during the summer. Consequently for a number of years Neal and Gary have summered in Alaska, but during the school year remained in Texas with their mother, where they attended school.

During the early part of August 1975, when Neal and Gary were scheduled to return to Texas, they ran away from their father's home in Alaska and remained in hiding until the flight to Texas, on which they held reservations, had departed Anchorage. Neal and Gary stated that they took this action in order to avoid having to return to Texas, since they desired to remain in Alaska with their father. Ray Lacy then sought legal advice, and subsequently moved to change custody of Neal and Gary from his former wife to himself.[2]

Ray Lacy's motion to modify custody was heard by the superior court on October 31, 1975, and again November 21, 1975. On December 3, 1975, the superior court rendered a decision requiring Ray Lacy to return Neal and Gary to their mother in Texas, and an order to that effect was entered.[3] This appeal followed.

The standard of review of a superior court's ruling on a motion to modify a custody decree was articulated in *Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970), where we observed:

> It is well established that on appeal our task is to ascertain whether or not the trial court misapplied the broad discretion vested in it in regard to determination of custody questions, and whether the court's findings in respect to custodial issues are clearly erroneous. (footnote omitted)

Expounding on this theme, Justice Connor wrote for a unanimous court in *Horton v. Horton,* 519 P.2d 1131, 1132 (Alaska 1974), that:

> Child custody determinations are among the most difficult in the law. Grave responsibility is placed upon the trial courts faced with making these determinations and, at the same time, broad discretion is granted them. However, while 'great weight must be accorded to the trial judge's experience and to his evaluation of demeanor testimony,' his discretion is not unlimited. On review we must determine whether that

---

1. Judge Moody's initial contact with this matter came as a result of Ray Lacy's motion to modify the custody provisions of the 1968 decree as amended by the 1972 order. Judge Harold Butcher entered the original decree and Judge James Fitzgerald authored the 1972 amendment of the decree's custody provisions.

2. In the meantime, however, Helen had taken action on her own initiative in the district court of Bexar County, Texas, and had secured an order requiring Ray to return the children to Texas. The order provided: "It is further ordered, adjudged and decreed that visitation rights of said children, Neal Lacy and Gary Lacy, with respondent, Ray S. Lacy, may be exercised upon the posting of a bond in the amount of $100,000.00, and that Ray Lacy may not remove the children from the jurisdiction of this court [Texas] without the approval of this court."

3. The superior court granted a temporary stay until the completion of the school term, which ended January 23, 1976, but ordered the boys be returned by that date. The superior court declined to grant a stay of its decision pending appeal under Appellate Rule 25. Ray Lacy then applied to this court for a stay and on January 22, 1976, Justice Burke granted a stay pending appeal.

discretion has been abused, perhaps by assigning too great a weight to some factors while ignoring others, perhaps by elevating the interests of one of the parties to the dispute above that of the child, perhaps by making a clearly erroneous finding with respect to some material issue, or perhaps in some other manner. [footnote omitted]

In the instant appeal, we do not reach the ultimate issue as to whether the superior court committed an abuse of discretion in failing to award the custody of Neal and Gary to Ray Lacy. For reasons which will be subsequently explained, we believe the matter must be remanded to the superior court for the purpose of conducting further proceedings.

■ In this appeal Ray Lacy has advanced five specifications of error. We turn initially to those that can be treated rather summarily. Ray Lacy contends that the superior court abused its discretion in failing to appoint a guardian ad litem to represent the interests of Neal and Gary in the modification proceedings. Under AS 09.65.130(a) the superior court is vested with discretion to appoint a guardian ad litem.[4] Further, this court has suggested that in custody proceedings a guardian ad litem should be appointed when appointment would substantially enchance the likelihood that the " . . . individual needs and interests of the children would be adequately represented."[5] The decision whether to appoint a guardian ad litem would appear to depend in large measure on the age of the children and the nature of the claim being advanced by the parent or parents.[6] Here the record shows that in response to an explicit inquiry by the superior court, counsel for both parties expressed the view that Ray Lacy and his trial counsel were fully capable of representing the interests of Neal and Gary. In light of the facts that neither party could suggest any specific benefit which a guardian might bring to the modification proceedings, and that appointment of a guardian ad litem would have necessitated a postponement of the hearing, we conclude that the superior court did not abuse its discretion in failing to appoint a guardian ad litem for the two minor children.

■ Ray Lacy next contends that the superior court erred in failing to recognize the desirability of keeping Linn, Gary and Neal together. We have previously held that in custody matters " . . . consideration should be given to the desirability of keeping the children of the family together so that they may enjoy the normal condition of childhood of growing up together as brothers and sisters."[7]

As was mentioned earlier, the original decree was modified in 1972 so as to give custody of the eldest son, Linn, to Ray Lacy. During the most recent custody hearings in the superior court, counsel for Ray Lacy, in arguing for custody of Neal and Gary, stressed the fraternal harmony which had been achieved during recent summers when the younger boys joined Linn in Alaska, and the benefits to be secured by modifying custody in favor of family unity on a year-round basis. The record clearly shows that the superior court was well aware that denial of the motion for modification would perpetuate separation of the brothers. Yet, it refused to accord this factor conclusive weight. More particularly, the superior court indicated that it thought the 1972 custody modification was a mistake which it would not

4. AS 09.65.130(a) provides:
   The court may, upon the motion of either party or upon its own motion, appoint an attorney or guardian ad litem to represent the interests of a minor or dependent child with respect to his custody, support, and visitation or in any other legal proceeding involving his welfare.

5. *In re P. N.*, 533 P.2d 13, 18 (Alaska 1975).

6. Here the children involved, Neal and Gary, were 15 and 13, ages of maturity according to appellant Ray Lacy's counsel.

7. *Rhodes v. Rhodes*, 370 P.2d 902, 903 (Alaska 1962) (footnote omitted). *Accord, Nichols v. Nichols*, 516 P.2d 732 (Alaska 1973); *Glasgow v. Glasgow*, 426 P.2d 617 (Alaska 1967).

exacerbate by granting another modification order having the effect of further diminishing Helen Lacy's custody rights. Thus, we find without merit Ray Lacy's contentions that the superior court failed to recognize the importance of keeping the brothers together and committed an abuse of discretion in failing to give this factor conclusive weight in determining the custody issue.

■ Appellant Ray Lacy's third contention is that the trial court failed to consider relevant parts of the testimony of Dr. John Wreggit, a child psychiatrist called by appellant.[8] Careful review of the entire record indicates that the superior court did not "totally disregard" the testimony of this witness. We therefore find no merit in this contention.[9]

This brings us to appellant's two remaining specifications of error which raise closely related issues. Ray Lacy contends that the superior court erred in failing to consider the preferences of Gary and Neal with respect to their custody, and committed further error by virtue of its refusal to hear their testimony or, in the alternative, to conduct an *in camera* interview with them.

■ With respect to the preferences of minor children in custody disputes, the relevant statute, AS 09.55.205, provides in part:

> In an action for divorce . . . the court may . . . at any time

. . . during the minority of any child of the marriage, make an order for the custody of or visitation with the minor child which may seem necessary or proper and may at any time modify or vacate the order. . . . In awarding custody the court is to be guided by the following considerations:

> (1) by what appears to be for the best interests of the child *and if the child is of a sufficient age and intelligence to form a preference, the court may consider that preference in determining the question;*
>
> (2) as between parents adversely claiming the custody neither parent is entitled to it as of right. [emphasis added]

Appellant Ray Lacy contends that, while children's wishes are not necessarily controlling in a custody determination, " . . they certainly are an important factor to be considered, provided the child is of sufficient mental capacity, age, maturity and intelligence." Since Gary and Neal are of sufficient capacity and maturity, appellant urges that it was error for the superior court not to have considered their preferences to live with their father.

The record reveals that the superior court was fully aware of Gary and Neal's preferences to continue living with their father.[10] At one point in the proceeding, the court informed counsel that:

> I'm convinced that these boys want to live with their father now, but my ques-

---

8. Among other things, Dr. Wreggit testified to the following points:

    (1) that Gary and Neal's preference to live with their father in Alaska was long-standing;

    (2) there appeared to be good family structure and harmony in the Ray Lacy household while the children were present;

    (3) the psychological counseling which Gary and Neal received in Texas was not "normal", and would not be necessary if they remained in Alaska. While in Texas, the record shows that Gary and Neal visited a psychologist approximately once a week during the years 1973–75.

9. It is true that Dr. Wreggit's testimony was not specifically mentioned by the superior

court in its oral decision. There is no requirement that the trial judge in this type of proceeding verbally review all the adduced testimony prior to rendering a decision.

10. Early in the proceeding the trial court evidenced its understanding that one of the principal elements in Ray Lacy's argument was the preference of the children.

    Moreover, in rendering its decision denying the modification motion, the trial court went to lengths to specifically address the desires of Neal and Gary. This is reflected in the following portions of the record:

    THE COURT: Now, I think there's a difference in what is to the best interest of the child and what the child desires. I think that's the difference from the north

tion is, is that sufficient to change custody?

.   .   .   .   .   .

I'm going to assume that these boys have a sincere desire to live with their father up here.   .   .   .

Thus, appellant's contention that the superior court failed to consider the children's preference is groundless.   Nevertheless, this conclusion is dispositive neither of the custody issues in the case at bar, nor of the significance of the preferences of Neal and Gary as to which parent they desired to live with.

As was indicated earlier, appellant also asserts that the superior court committed error by virtue of its refusal to take the testimony of Neal and Gary or, in the alternative, to conduct an *in camera* interview with them.   The trial court declined to do either, finding the children's preferences fully established by the arguments of appellant's counsel and by the opposing counsel's stipulation.[11]   In our view, the superior court's refusal to take the testimony of Gary and Neal, either in open court or *in camera*, requires that the matter be remanded to the superior court for further proceedings.

Exclusion of the children's testimony was prejudicial because it denied appellant the opportunity to elicit the bases for Gary and Neal's strong preferences to live with their father.   It has been held that the weight to be accorded a child's preference in custody disputes depends to some extent on the basis and reasons for that preference.[12]   Thus, for example, a preference for one parent's domicile stemming from the greater cultural or educational opportunities offered in that location has been given substantial weight,[13] while a preference based on a desire to avoid reasonable parental discipline is minimized.[14]   In the case at bar we are of the view that the superior court's refusal deprived appellant of the opportunity to elicit whatever valid reasons Gary and Neal had for their marked preference.[15]

In short, given the respective ages of Gary and Neal and the fact that their expressions of preferences to live with their father triggered and provided the foundation for appellant's motion to modify custody, it became imperative that the superior court either conduct or permit a judicious and searching inquiry regarding the reasons for the children's preferences.[16]   The

pole and the south pole and by that I mean just what a child wants is never necessarily what is to the best interest.

.   .   .   .   .   .   .

Now, I don't think there's any question here, it's stipulated that these children want to stay with the father but that's not necessarily to their best interests because children as well as grown-up people are going to have to do things they do not like through life and I don't know of a better time to start than when you're children.

11. According to the record, the following transpired:
   THE COURT:   .   .   .   I'm going to assume that these boys have a sincere desire to live with their father up here.   Do you contest that?
   MS. SAVILLE:  [Counsel for Helen Lacy] No, I don't.

12. Annot., Child's Wishes As a Factor in Awarding Custody, 4 A.L.R.3d 1396, 1437–42 (1965).

13. *See Seley v. Seley*, 13 Misc.2d 914, 178 N.Y.S.2d 988 (1958) ; *Commonwealth ex rel. Gregory v. Gregory*, 188 Pa.Super. 350, 146 A.2d 624 (1958).

14. *See Smith v. Smith*, 257 Iowa 584, 133 N.W.2d 677 (Iowa 1965) ; *Hahn v. Falce*, 56 Misc.2d 427, 289 N.Y.S.2d 100 (1968).

15. Such evidence could have served, for example, to rebut the deposition testimony offered by Helen Lacy that Gary and Neal's preference derived from a desire to avoid discipline.

16. Inherent in our conclusion here is that neither the affidavits of Neal or Gary nor counsel's statement as to what the two children would have testified to are adequate substitutes for the superior court's hearing the testimony of both Gary and Neal.
   In regard to counsel's statement as to what Neal and Gary would have stated, the record shows that counsel told the court:
   MR. ROSS: The boys, if they testified, would testify that, that they've always

contemplated inquiry should be conducted dispassionately and should explore such matters as the reasons for and duration of Gary and Neal's preferences, the presence or absence of any wrongful inducements which possibily influenced their preferences, and the seriousness and wisdom of any particular preference.

This court cannot ignore the practical problem created by the advancing age of the two boys. In the near future they will be emancipated and may freely choose the parent with whom they wish to reside. Certainly this framework provides additional impetus for a searching inquiry into the reasons for their preference. Only in this way can the court fashion a remedy which has any reasonable chance of gaining the acceptance so necessary to permit such an awkward human situation to continue to exist and provide for the best interests of the children.

We agree with the superior court that custody decrees are not subject to modification merely because a child has developed a preference for one parent over the other. But where, as in the instant case, it would appear that the preferences of Gary and Neal are of long-standing duration, it was incumbent upon the superior court to hear Gary and Neal's testimony regarding the circumstances of their preferences. Once the court has heard such testimony, it is then to determine whether the children's preferences, when considered with all other relevant factors, are sufficient to warrant the determination that it is in the best interests of the minor children to modify the decree's custody provisions.

Remanded for further proceedings consistent with this opinion.

---

wanted to be with their dad, that they've told their dad this, that they talked their dad into taking it into court in 1972 and that instead of getting just a—all 3 of them to stay with their dad, only one of them lucked out and that the other 2 had to go back to Texas, and that they've been after their dad ever since to try and get them to stay, and that for the last 2 years they've been required to go see Dr. Schroeder who has attempted to convince them that they ought to stay in Texas and that she hasn't been able to do that, and that they still want to stay here and—they'll probably tell you that in chambers. . . .