Deanna GRATRIX, Appellant,

v.

Kris GRATRIX, Appellee.

No. 5980.

Supreme Court of Alaska.

Oct. 8, 1982.

A. Lee Petersen, A. Lee Petersen, Inc., Anchorage, for appellant.

Harold W. Tobey, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

This case involves a child custody dispute between Deanna Gratrix and Kris Gratrix, the natural parents of Koresa Gratrix, a minor. Deanna appeals from a superior court order transferring custody of the parties' daughter, Koresa, from the mother, Deanna, to the father, Kris. Deanna raises two challenges to the superior court's custody modification order: that the superior court failed to give sufficient deference to the factual findings upon which the original custody decree was based, and that there was no change in circumstances since the original custody decision justifying the modification of custody. We agree with each of these contentions and conclude that the superior court's order must be reversed.

Deanna and Kris Gratrix were married in August 1969. In January 1980, Deanna filed for divorce, requesting custody of Koresa, their nine year-old daughter.[1] On August 29, 1980, following a seven-day trial, Judge James Singleton, then of the superior court, entered a partial divorce decree granting custody of Koresa to Deanna and

---

1. She also sought custody of Grant Gratrix (19 years old), Jeffrey Gratrix (16 years old), and Rikki Gratrix (14 years old), her children from two prior marriages. Although these children bear the legal name of Kris Gratrix, they were never adopted by him and their custody is not at issue in this case.

visitation rights to Kris. In awarding custody to Deanna, Judge Singleton stressed three factors: that during the marriage Deanna had been the primary custodian of Koresa, responsible for providing the day-to-day care of the child, while Kris had assumed the role of the financial provider; that Koresa looked to her mother as the primary parent resource and seemed to prefer to spend most of her time with her mother, with visitation by her father; and that placing Koresa with Deanna would enable Koresa and her sister Rikki to maintain a close sibling relationship, instead of separating them by granting custody of Koresa to Kris.

In addition to these three primary reasons, Judge Singleton made reference to other factors which he took into account in reaching his custody decision. There were incidents of physical violence by Kris toward Deanna. On the other hand, there was evidence supporting Kris's charge that Deanna spent too much time "out on the town" at night rather than home with the children. Judge Singleton expressed the view that this conduct would probably improve in the future when the divorce litigation terminated and the parties resumed a more normal life. In addition, the court praised Kris for his interest in the children and his efforts to help Koresa with her school problems. While admitting that it was a difficult question and finding that both parents were fit to have custody, Judge Singleton concluded that it was in the child's best interest to be in the primary care of her mother with liberal visitation rights in the father.[2]

On December 17, 1980, less than four months after the initial decree had been entered, Kris filed a motion for modification of custody seeking custody of Koresa. In support of his motion he asserted the following as "changed circumstances" warranting the requested modification of the original custody order. First, Kris stated that he had remarried (December 12, 1980), that he could now provide a stable home and was better able to minister to Koresa's needs with the aid of his new wife. Second, he claimed that Deanna's "partying" lifestyle had continued since the initial decree and that this behavior interfered with her responsibilities toward Koresa and Rikki. Third, he asserted that Koresa was having increasing problems at school, as evidenced by her poor grades and attendance record, and that Deanna was either unwilling or unable to deal with Koresa's educational difficulties. Finally, he presented reports of several criminal complaints involving Deanna as evidence of her alleged emotional instability and inability to properly care for Koresa.[3]

The superior court, Judge Mark Rowland, held a series of hearings on the motion for change of custody from December 22, 1980 to April 13, 1981.[4] Evidence was offered by both parties on Koresa's educational problems, Deanna's alleged irresponsible lifestyle, Jeffrey's alleged misconduct and De-

2. Kris did not appeal from this decision, although he did file an unsuccessful motion to set aside the judgment.

3. Attached as exhibits to the motion for change of custody were police reports of three incidents involving Deanna. On October 27, 1980, Deanna backed her truck into Kris's business office window and then ran her truck into his pickup and his fiance's car. Deanna stated that she did this to get even with Kris for "stealing her daughter" the previous weekend and for destroying her personal property. On November 22, 1980, Deanna broke into Kris's business office and then began loading office equipment into her truck; Deanna claimed she was attempting to recover alleged overdue child support payments. Neither of these incidents resulted in any criminal charges.

On November 10, 1980, the police responded to a call from Kris who stated that Deanna had called and told him that her 17-year-old son Jeffrey had assaulted her. Kris agreed to go over to Deanna's residence but called the police because he wanted them there when he entered the residence. The police questioned Deanna, but she refused to discuss the alleged incident.

4. Although Deanna was initially represented by counsel, during most of the modification proceedings she appeared pro per, stating that she could no longer afford an attorney. At one point an attorney made a brief appearance for Deanna, but he promptly withdrew from the case when Judge Rowland denied his motion for a continuance.

anna's inability to discipline or control her son's behavior.[5] Koresa's guardian ad litem, Jeanne Riley, reported on her conversations with Koresa and her sister Rikki, and her observations of the respective parties. The guardian testified that Koresa's primary desire was for access to her father through visitation. According to Riley, Koresa did not complain about wanting to live with her father so much as she wanted to reduce the tensions between her parents.

Following the guardian's report, the superior court directed that Deanna, Kris and Koresa undergo a psychological evaluation by Dr. Richard Enter, a clinical psychologist. Dr. Enter filed a written report of his findings and appeared as a witness. Dr. Enter testified that based on his evaluation of the parties Koresa would probably be better off in the custody of Deanna. This conclusion was grounded on his opinion that Deanna's behavior was more consistent than Kris's. He stated that Kris would tend to fluctuate from periods of sobriety and upstanding citizenship to periods of extreme alcohol abuse and violent behavior. Dr. Enter acknowledged that Deanna was self-centered and not the "all-American mother", but that there was a strong emotional bond between Deanna and Koresa. In his opinion, Kris was presently unable to maintain any long term control over his drinking and fluctuating behavior. Dr. Enter concluded that Koresa's long term needs would best be met by granting custody to Deanna.[6]

At the conclusion of the hearings, the superior court announced its decision to transfer custody of Koresa to her father, Kris. In reaching this decision, Judge Rowland focused on three factors. First, he found that Kris had demonstrated increased parental responsibility and that Kris had a "longer track record" of emotional stability than Deanna, despite his continuing problems with alcohol abuse. Second, he agreed with Dr. Enter's assessment that Deanna placed her own needs somewhat ahead of the child's and concluded that Deanna would not provide the proper environment for Koresa's social and educational development. Finally, Judge Rowland indicated at several points that he was extremely concerned about Deanna's failure to respond to Jeffrey's anti-social conduct. He stated that it raised serious doubts in his mind as to Deanna's ability to deal with and supervise her children. The court concluded that it was in the best interests of the child to place her in Kris's custody with visitation rights in Deanna. This appeal followed.[7]

We have previously recognized that child custody determinations are among the most difficult in the law and that trial courts are vested with broad discretion in dealing with this responsibility.[8] In reviewing a superior court's ruling on a motion to modify custody, we will apply the "clearly erroneous" standard of review.

> It is well established that on appeal our task is to ascertain whether or not the trial court misapplied the broad discretion vested in it in regard to determination of custody questions, and whether the court's findings in respect to custodial issues are clearly erroneous.

*Sheridan v. Sheridan,* 466 P.2d 821, 824 (Alaska 1970) (footnote omitted). We will reverse a trial court's resolution of custody issues only if this court is convinced that

5. At the time of the modification hearings, Jeffrey had apparently been residing for some time either on his own or with Kris because both Kris and Deanna recognized that Jeffrey was not amenable to any disciplinary control by his mother.

6. Dr. Enter's conclusion seemed to be based on considerations similar to those relied on by Judge Singleton in his original decision. Dr. Enter stressed the fact that Deanna had been the primary custodian for the children throughout the marriage. He noted the strong emotional bond between Deanna and Koresa and

opined that once the divorce and custody matters were settled Deanna would also settle down. Very similar reasoning was expressed by Judge Singleton in his custody decision.

7. A stay of Judge Rowland's modification order, pending appeal to this court, was granted by a single Justice of this court.

8. *Horutz v. Horutz,* 560 P.2d 397, 399 (Alaska 1977); *Lacy v. Lacy,* 553 P.2d 928, 929 (Alaska 1976).

the record shows an abuse of discretion or if controlling factual findings are clearly erroneous. *Horutz v. Horutz,* 560 P.2d 397, 399 (Alaska 1977).

> However, while 'great weight must be accorded to the trial judge's experience and to his evaluation of demeanor testimony,' his discretion is not unlimited. On review we must determine whether that discretion has been abused, perhaps by assigning too great a weight to some factors while ignoring others, perhaps by elevating the interests of one of the parties to the dispute above that of the child, perhaps by making a clearly erroneous finding with respect to some material issue, or perhaps in some other manner.

*Horton v. Horton,* 519 P.2d 1131, 1132 (Alaska 1974) (footnote omitted). Abuse of discretion is established if the trial court considered improper factors or failed to consider statutorily-mandated factors, or improperly weighted certain factors in making its determination. *Deivert v. Oseira,* 628 P.2d 575, 577 (Alaska 1981). In the context of a custody modification decree, this analysis must be applied to assess whether the superior court was justified in changing the previous custody determination.

Deanna argues that the superior court abused its discretion because it failed to give proper deference to the findings made in the original custody decision, and that Kris failed to satisfy the heavy burden of persuasion imposed on a party requesting modification of custody. She cites *Nichols v. Nichols,* 516 P.2d 732, 735 (Alaska 1973), where we stated:

**9.** AS 09.55.205 reads:

> *Judgments for custody.* In an action for divorce or for legal separation the court may, if it has jurisdiction under AS 25.30.020, and is an appropriate forum under AS 25.30.050 and 25.30.060, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any child of the marriage, make an order for the custody of or visitation with the minor child which may seem necessary or proper and may at any time modify or vacate the order. Any appointment of a guardian ad litem for a child shall be made under the terms of AS 09.65.130. The court shall determine custody in accordance with the best interests of the child. Neither parent is entitled to prefer-

> [I]n considering the custody questions involved, a trial court should, of course, be guided primarily by considerations of the welfare and best interests of the children. But due weight must be given to the findings made at the original hearing and a change in custody should not be ordered lightly. Children should not be shuttled back and forth between divorced parents unless there are important circumstances justifying such change as in their best interests and welfare.

Kris asserts that under AS 09.55.205 the superior court may grant a motion for change in custody whenever it seems "necessary or proper" and that the statute does not state that deference must be given to the original decree.[9] He contends that *Nichols* is factually distinguishable from the present case. In *Nichols,* the original decree awarding custody to the father was based in large part on a finding that the mother was unfit. Three years later the mother filed a motion for change of custody which was granted. In reversing the modification order, we held that the trial judge must give "great weight" to the original finding of unfitness. *Nichols,* 516 P.2d at 735. Kris argues that the issue in *Nichols* was the weight to be given to a previous finding of unfitness and that a requirement of "great weight" should not be applied to the general findings of the initial decree. Since there was no finding of unfitness on the part of Deanna or Kris in the original custody decree, Kris asserts that Judge

ence as a matter of right in awarding custody of the child. In determining the best interests of the child the court shall consider all relevant factors including:

(1) the physical, emotional, mental, religious and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and the ability of each parent to allow an open and loving frequent relationship between the child and his other parent.

Rowland was not required to defer to Judge Singleton's findings.

■ In several of our prior decisions we have indicated that a court considering a request for custody modification must give deference to the findings made in the original custody determination. *Deivert v. Oseira,* 628 P.2d 575, 578 (Alaska 1981); *DeHart v. Layman,* 536 P.2d 789, 791–92 (Alaska 1975); *Nichols,* 516 P.2d at 735. Kris's attempt to distinguish *Nichols* and to limit the applicability of the requirement of due deference is mistaken since it overlooks the rationale of that case. Although *Nichols* involved a specific finding of unfitness, we indicated that we were concerned with the problems which would arise if changes in custody were easily obtainable.

> Clark, in his text The Law of Domestic Relations in the United States, § 17.7, at 600, points out the danger in repeatedly modifying custody orders so
>
>> that the child will be disturbed and upset by the repeated changes. So far as can be determined from the reported cases, courts are aware of this danger and are generally reluctant to modify existing custody arrangements, but so long as modification is possible, parents who wish to prolong the battle may be able to persuade a new judge to accede to their requests for a change in custody. The only cure for this evil is continued careful scrutiny of each case at the trial court level, coupled with the imposition of a heavy burden of persuasion upon the party asking for modification.[10]

Thus, the requirement of great weight or due deference is intended to insure that custody modifications are not based solely upon a reweighing of the evidence which was presented at the original custody hearing.[11] We now consider whether the superior court gave proper deference to the findings Judge Singleton made in the initial custody decree.

■ In reaching the original custody determination, Judge Singleton found that Deanna had been the primary custodian of Koresa, that Koresa looked to Deanna as her primary resource and preferred to remain in Deanna's custody, that Deanna and Kris were both fit to have custody, and that granting custody to Kris would significantly harm the sibling relationship between Koresa and her sister, Rikki. Deanna argues that in granting Kris's motion for custody modification, Judge Rowland gave little or no deference to the decision which had been entered less than four months before, basing his decision entirely on the evidence which was addressed in the hearings he conducted.

Our study of the record indicates that Judge Rowland made only passing reference to the prior proceedings.[12] There was no discussion of Judge Singleton's findings regarding Deanna's status as the primary parenting resource for Koresa, the child's preference for remaining with her mother, or the sibling relationship[13] between Koresa and Rikki. The court's failure to address these factors takes on even greater significance in light of the fact that Dr. Enter, who recommended that Koresa remain in Deanna's custody, based his conclusion on some of the same considerations which were reflected in Judge Singleton's findings.[14]

**10.** *Nichols,* 516 P.2d at 735–36 (footnote omitted).

**11.** In *Nichols,* 516 P.2d at 736 (Alaska 1973), we cited with approval *Laughton v. Laughton,* 71 Wyo. 506, 259 P.2d 1093, 1097 (Wyo.1953), in which the Wyoming Supreme Court stated that in considering a motion to modify custody, "every presumption is in favor of the reasonableness of the original decree."

**12.** In his oral decision, Judge Rowland's only mention of the original proceedings was his statement that, "I've had the record which was available in the case itself....", in his summarization of the evidence he had considered in reaching his decision.

**13.** We have noted the importance of maintaining sibling relationships unless their welfare clearly requires that they be separated. *Lacy v. Lacy,* 553 P.2d 928, 930 (Alaska 1976); *Horton v. Horton,* 519 P.2d 1131, 1133 n. 5 (Alaska 1974); *Nichols v. Nichols,* 516 P.2d 732, 736 (Alaska 1973).

**14.** *See* note 6 *supra.*

The superior court's conclusion that Deanna was not providing adequate care or supervision for Koresa conflicts with the previous finding that Deanna was fit and proper to have custody of the child. In addition, Judge Rowland's conclusion seems to have been based at least in part on a reweighing of the evidence of Deanna's lifestyle and general social mores. Given the absence of any discussion of the specific findings made in the prior custody determination, we conclude that the superior court failed to accord proper deference to the initial custody findings and decision.

Deanna next contends that the superior court abused its discretion because there was no showing of change in circumstances since the original decree which warranted a transfer of custody. Kris argues that the prime consideration in custody determinations is the best interest of the child and that the court is not required by statute [15] or case law to meet a "change of circumstances" test before it has authority to modify custody. To resolve this dispute, we must first consider the purpose and applicability of the "changed circumstances" rule.

The genesis of the "changed circumstances" doctrine can be traced to *Houger v. Houger,* 449 P.2d 766, 773 (Alaska 1969), where we held that the trial judge

> would have been justified in modifying the custody arrangements only if it had been shown that since the date of entry of the judgment changed facts and circumstances affecting the welfare of the children required modification for the best interests of the children.

In subsequent cases, however, we have stated that "changed circumstances" is not an absolute prerequisite to a modification of custody. *Deivert v. Oseira,* 628 P.2d 575, 578 (Alaska 1981); *Nichols v. Nichols,* 516 P.2d 732, 735 (Alaska 1973); *King v. King,* 477 P.2d 356, 360 (Alaska 1970). In *Starkweather v. Curritt,* 636 P.2d 1181, 1182 (Alaska 1981) we observed, in regard to change of circumstances, that:

The paramount consideration in the determination of child custody is the best interests of the child. AS 09.55.205; *Veazey v. Veazey,* 560 P.2d 382 (Alaska 1977); *Horutz v. Horutz,* 560 P.2d 397 (Alaska 1977). In an action to modify a child custody decree, we have also noted that a 'substantial change in circumstances' is typically necessary to afford the court a 'logical basis' to modify the prior order. *King v. King,* 477 P.2d 356 (Alaska 1970). We have cautioned, however, that this requirement is not an 'ironclad barrier' to judicial reconsideration, but only one factor to be considered by the superior court. *Deivert v. Oseira,* 628 P.2d 575, 576, 578 (Alaska 1981).

We think that the "changed circumstances" requirement can best be understood as another facet of the general rule against liberal modification of custody provisions.

> Without some change in circumstance there is no logical basis for a court to alter a determination which has once seriously and finally been made. To do so might well constitute an abuse of discretion. However, as we noted at the outset, both statute and decision make it clear that the paramount consideration is the best interest of the child. The concept of 'substantial change' of circumstances is not a limitation on the discretion of the trial court to determine custody according to the best interest of the child. Rather, it may be considered simply a rule of judicial economy designed to discourage discontented parents from continually renewing custody proceedings.[16]

In other words, the "changed circumstances" rule, like the requirement of due deference to prior findings, is intended to discourage continual relitigation of custody decisions. Although the paramount consideration is the best interests of the child, the general application of the requirement of a change in circumstances reflects the judicial assumption that finality and certainty in

---

15. *See* note 9 *supra.*

16. *King v. King,* 477 P.2d 356, 360 (Alaska 1970).

custody matters are critical to the child's emotional welfare.[17]

■ We therefore conclude that while it may be possible for a court to change custody absent any showing of an alteration in circumstances since the previous custody determination,[18] this important factor must be specifically considered by the court in ruling upon motions to modify custody.

In transferring custody to Kris, the trial court relied on the following factors: Kris's remarriage and recent control of his drinking problems; Deanna's inability to supervise her son Jeffrey and her unwillingness to report his alleged anti-social conduct to the police; Koresa's difficulties in school; and the court's conclusion that Deanna would not provide a proper atmosphere for Koresa's development as a responsible citizen. In addition, Kris cites the evidence of Deanna's continued nightlife and the police reports regarding her destruction of his property and her breaking into his office.

■ We have previously held that mere improvement in the position of one of the parties is not sufficient to justify a change in custody. *Nichols,* 516 P.2d at 736. Kris's recent remarriage and abstention from drinking were not proper grounds upon which to base a change of custody, especially given the short duration of this improved lifestyle.[19] As for Koresa's educational problems and Deanna's alleged unwholesome lifestyle, both of these factors were presented to and considered by Judge Singleton in the initial custody hearings.[20] Koresa's teachers and principal testified be-

fore Judge Singleton in the original custody hearings and again before Judge Rowland in the modification proceedings. The substance of their testimony was the same in each instance, i.e., that Koresa's grades and attendance record needed improvement and that Kris seemed to exert a more positive influence on Koresa's educational progress than did Deanna. In granting custody to Deanna, Judge Singleton praised Kris for these efforts and expressed the hope that they would continue. In addition, Judge Singleton specifically noted that he was aware of Deanna's late night partying, yet he concluded that she was fit to have custody and that she had been and continued to be Koresa's primary parent resource. Given the short time period between the original decree and the motion for modification, we think that Judge Rowland's reliance on these factors involved a reweighing of previously presented evidence rather than a consideration of any changed circumstances.

The incidents involving Deanna's destruction of property admittedly reflect on the emotional stability of Deanna. From the record we think it is apparent that these incidents were really a by-product of the acrimonious bickering and wrangling of the parties in this ongoing custody dispute. There was no showing that these incidents had a detrimental effect on the child's welfare.

The most significant new evidence presented at the modification hearings related to Deanna's handling of the alleged

---

**17.** *Nichols v. Nichols,* 516 P.2d 732, 735–36 (Alaska 1973); *see* H. Clark, The Law of Domestic Relations in the United States § 17.7 at 600 (1968).

**18.** In *King v. King,* 477 P.2d 356, 360 n. 7 (Alaska 1970), this court cited *Foster v. Foster,* 8 Cal.2d 719, 68 P.2d 719, 723 (Cal.1937), in which the California Supreme Court observed that it was perhaps possible to conceive of a situation where the welfare of the child might require that custody be changed, even though there had been no change in circumstances.

**19.** Dr. Enter reported that Kris's control of his drinking was due in large part to certain physical ailments which temporarily prevented him from drinking excessively. Dr. Enter testified

that "maintaining sobriety by physical problems is simply not—simply does not have a high probability of success . . . ."

**20.** We think it was improper to alter custody because of Koresa's short-term poor performance in school, given the fact that a significant factor in Koresa's educational problems seems to have been the ongoing custody dispute itself. Koresa's teacher and her principal testified to the less than surprising fact that children whose parents are in the process of divorce often experience emotional problems which may affect their school performance. In addition, there was testimony that the parties have contributed to Koresa's absences from school.

anti-social conduct of her son Jeffrey. The trial court stated several times that this was clear evidence of Deanna's inability to properly care for her children. Deanna's lack of control over Jeffrey was known, however, prior to the entry of the initial custody decree. In the original custody evaluation presented to Judge Singleton by the custody investigator, it was noted that Jeffrey refused to recognize his mother's authority and that all the parties agreed that Jeffrey should live with Kris. While Jeffrey's presence and behavior could pose a realistic threat to Deanna and Koresa, this problem would be better addressed by structuring Jeffrey's contact with Deanna and Koresa, rather than by transferring custody of Koresa to Kris.

Review of the entire record in this case persuades us that the bulk of the grounds asserted in support of the motion to modify custody were reiterations of the factors and evidence considered by Judge Singleton in his original custody decision. It is significant that the motion for modification of custody was filed less than four months after the original decree was entered. During this four month period the parties had little opportunity to settle their lives. Given the superior court's failure to accord due deference to the initial custody findings and the absence of any substantial change in circumstances, we conclude that the transfer of custody was an abuse of discretion. The superior court's order modifying the initial custody decree is reversed.

REVERSED.

BURKE, Chief Justice, dissenting.

I respectfully dissent.

I am not convinced that Judge Rowland failed to "accord due deference to the initial custody findings" of Judge Singleton or that his order for change of custody was an abuse of discretion. Given the conduct of Mrs. Gratrix throughout the course of the proceedings below, I am hard pressed to say that there weren't sufficient changed circumstances to support Judge Rowland's decision.