Clyde Ray HARVICK, Appellant,

v.

Dorthea M. HARVICK, Appellee.

No. S–4436.

Supreme Court of Alaska.

April 3, 1992.

Clyde Ray Harvick, pro se.

Terry C. Aglietti, Aglietti, Rodey & Offret, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Pro se litigant Clyde Harvick appeals the superior court's decision to permit his exspouse, Dorthea Harvick, to withdraw her voluntary relinquishment of parental rights in their daughter. The court's decision effectively reinstated an earlier court order awarding custody to Dorthea. Although we agree that Dorthea, a native Alaskan, had the right to withdraw her relinquishment under the Indian Child Welfare Act (ICWA), we remand this case for a hearing to determine what custody disposition is in the child's best interests.

### I.

Dorthea and Clyde Harvick were divorced in March 1979. The court gave Dorthea custody of the couple's two-year-old daughter, Mary Jean. Clyde received reasonable visitation rights.

Subsequent to the divorce, Dorthea developed a severe problem with alcohol. In April 1981, she placed Mary Jean with the Division of Family and Youth Services (DFYS) and enrolled in an alcohol treatment program. In June 1981, Dorthea voluntarily signed a relinquishment of her parental rights before Master William Hitchcock. Master Hitchcock signed a voluntary consent certification as required by statute. DFYS took temporary custody of Mary Jean.

Later that month, DFYS moved Mary Jean from foster care to the care of her father who was then residing in Utah. According to the DFYS report, Clyde was "willing and anxious" to take custody of Mary Jean. A home study conducted by Utah social services at the request of DFYS indicated that he was a fit person to take custody of Mary Jean.

It appears from the record that neither Clyde nor the state sought a final termination of Dorthea's rights. Although DFYS paperwork indicated that "legal custody" was being returned to Clyde, no order giving Clyde formal custody of Mary Jean was ever issued by any court.

Mary Jean lived with her father for approximately six and one-half years. Dorthea had no contact with Mary Jean until she wrote her daughter in 1987. Dorthea did, however, correspond sporadically with Clyde.

In November 1987, Dorthea filed an action in California, where Clyde was then living with Mary Jean, seeking to enforce the 1979 custody decree. She filed an affidavit with the California court claiming that she had not known of Mary Jean's whereabouts during the last six and one-half years. She also claimed that she had voluntarily given Clyde temporary custody of Mary Jean while she went through alcohol treatment but that he had simply taken and kept the child.

Clyde informed the California court that Dorthea had voluntarily relinquished all rights to the child. However, Clyde could not produce documents to prove that this relinquishment had occurred. The California court, having only the custody decree before it, ordered that Mary Jean be returned to her mother. Consequently, Mary Jean has been in Dorthea's physical custody since November 1987.

In January 1988, Clyde moved to modify custody in the Alaska courts.[1] In May 1989, Dorthea moved to withdraw her voluntary relinquishment. In October 1989, Judge Andrews consolidated Dorthea's motion with Clyde's motion to modify.

In December 1989, Judge Andrews granted Dorthea's motion to set aside relinquishment of her parental rights. In her decision and order, Judge Andrews stated that:

> [U]nder the plain language of § 1913 [of the Indian Child Welfare Act (ICWA)], it appears that, no final decree of termination having been entered by the Alaska courts and no final petition of adoption having been signed that Ms. Harvick has an unqualified right to withdraw her voluntary relinquishment. To find otherwise would be contrary to the dictates of ICWA and the ameliorative goals of that act....
>
> The effect of this court's order granting the withdrawal of Ms. Harvick's voluntary relinquishment is to set the parties back to their respective legal positions of March 15, 1979, pursuant to the divorce decree granted at that time. The mother has custody of the child. The father has rights of visitation.

Judge Andrews also ruled that Clyde's motion for modification was not ripe for decision.[2] This appeal followed.

## II.

■ Trial courts are vested with broad discretion in dealing with custody issues. *Gratrix v. Gratrix,* 652 P.2d 76, 79 (Alaska 1982). We review custody determinations on an abuse of discretion basis. *Id.* at 79–80. It is within the special competency of this court to independently interpret a statute. *Wien Air Alaska, Inc. v. Dep't of*

*Revenue,* 647 P.2d 1087, 1090 (Alaska 1982).

■ A literal application of the ICWA authorizes Dorthea's withdrawal of her relinquishment. The ICWA provides that:

> In any voluntary proceedings for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent.

25 U.S.C. § 1913(c). *See In re J.R.S. v. M.S.F.,* 690 P.2d 10 (Alaska 1984) (consent to termination of parental rights under the ICWA may be withdrawn at any time before a final decree of termination is entered). Although the drafters of this statute probably never envisioned the unusual circumstances of this case, a plain reading of the section supports the trial court's decision to allow Dorthea to withdraw her relinquishment.

However, the relinquishment issue clouds what is essentially a custody dispute between divorced parents. Although no court order transferred legal custody to Clyde, we cannot ignore the fact that he was the child's sole care giver for six and one-half years.

■ In general, when a divorce decree gives custody to one parent, as opposed to the other, it is effective only as between the parties to the divorce. *Turley v. Turley,* 638 P.2d 469 (Okla.1981). Courts have applied this rule in holding that the right to custody of a minor child automatically transfers to the non-custodial parent when the custodial parent dies. *Id.; Woodford v. Superior Court,* 82 Ariz. 181, 309 P.2d 973 (1957). Similarly, in this case, Dorthea's relinquishment of parental rights op-

---

**1.** Superior court Judge Elaine Andrews ordered a custody evaluation and held a hearing on Clyde's motion to modify custody in May 1989. At the hearing Clyde attempted to show that Dorthea had voluntarily relinquished all her parental rights through the testimony of the social worker who had been present at the relinquishment. Judge Andrews stopped the hearing when she realized that Clyde was attempting to prove termination of parental rights by testa-

mentary rather than documentary evidence and sent the attorneys to look for the relinquishment document. Once the relinquishment file was located, Judge Andrews ordered another hearing.

**2.** Apparently, the court ordered Clyde's motion to modify custody withdrawn without prejudice on November 1, 1990.

erated to transfer custody to Clyde as the only remaining natural parent. The relinquishment document, which was approved by the court, constitutes a modification of custody.

Although Dorthea retains the right to withdraw her relinquishment under the ICWA, it does not naturally follow that she is therefore entitled to legal custody of her daughter under state law. We therefore conclude that the superior court erred in returning the parties to their 1979 legal positions without further proceedings to modify custody.[3]

The superior court has continuing jurisdiction "during the minority of a child of the marriage, [to] make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper...." AS 25.24.150(a). Both our case law and statutes require custody determinations to be in accordance with the best interests of the child. *See Gratrix*, 652 P.2d at 82 (the paramount consideration in custody determinations is the best interest of the child); AS 25.24.-150(c).

We believe that the unique facts of this case require a hearing to determine what custody disposition is in the best interests of Mary Jean. Although, in general, it is desirable to maintain continuity of care, *see*

*Morel v. Morel*, 647 P.2d 605, 608 (Alaska 1982), Mary Jean has lived with both her mother and father for extended periods. The trial court should recognize that Mary Jean lived with her father for six and one-half years having little or no contact with her mother and that Dorthea removed Mary Jean from her father's care by deceptive means. We emphasize, however, that this hearing should focus on Mary Jean's interests. To this end, the court should ascertain her preferences. AS 25.24.-150(c)(3).

Because we find that Clyde is Mary Jean's legal custodian, Dorthea has the burden of showing that substantial reasons exist for changing custody and that such a change is in the best interests of Mary Jean. *See Garding v. Garding*, 767 P.2d 183, 185 (Alaska 1989) (parent seeking modification of custody decree must show substantial change in circumstances).

We REMAND this case to the superior court for further proceedings consistent with this opinion.

---

**3.** It is unclear why the superior court ruled that Clyde's motion was not ripe for decision at the December hearing. We have previously observed that the ripeness doctrine is designed to prevent judicial review of abstract disagreements. *Standard Alaska Production Co. v. State*, 773 P.2d 201, 210 n. 14 (Alaska 1989). This is not such a dispute.