NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KRISTINE S., | ) | |
| | ) | Supreme Court No. S-18176 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-15-00370 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| DAVID I., | ) | AND JUDGMENT[*] |
| Appellee. | ) | |
| | ) | No. 1921 – September 14, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Kristine S., f/k/a Kristine I., pro se, Kenai, Appellant. Lynda A. Limón, Limón Law Firm, Anchorage, and Randi R. Vickers, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

Divorcing parents of four children participated in mediation and agreed to a parenting plan, which was approved by the superior court. Because of the mother's history of substance abuse, the parenting plan required her visitation with the children to be supervised. The plan allowed increased visitation if she complied with specific treatment and testing requirements designed to address her substance abuse. The mother moved to modify custody and visitation even though she had not complied with the requirements. The superior court denied the motions because she did not demonstrate

---

[*]    Entered under Alaska Appellate Rule 214.

a substantial change in circumstances. The mother appeals. Because the court did not err by denying her motions or limiting the scope of the evidentiary hearing, we affirm its decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

David I. and Kristine S. married in 2005 and have four children. David filed for divorce in 2015, and the superior court entered a decree of divorce in 2017. The proceedings over the course of those two years largely focused on custody of the children. Kristine has a significant history of drug and alcohol abuse. During the marriage, Kristine completed a variety of substance abuse treatment programs but always relapsed. Her substance abuse at times endangered the children: Kristine drove her car with the children inside into the side of a garage, and she repeatedly threatened to kill herself in their presence, once firing a gun inside the house.

The court appointed a custody investigator; the investigator concluded that Kristine needed to "address her treatment in a meaningful way and demonstrate a long term, verifiable, period of sobriety" before shared custody could be recommended. A psychologist appointed to evaluate both parents wrote that Kristine had "proved repeatedly that she will be dishonest in her attempts to continue using drugs and behaving in the fashion she wants to." The psychologist also noted that it was "difficult to monitor" Kristine's drug abuse because she abused so many drugs, including prescription medications and over-the-counter medication such as Ny-Quil.

Kristine and David reached a settlement agreement and a parenting plan after four days of mediation followed by two days of negotiation. The superior court approved the agreement and entered a Parenting Plan Order (PPO) based on the agreement. The PPO awarded David primary physical and sole legal custody. Kristine was awarded supervised visitation three days a week but was prohibited from driving her

children.

The PPO laid out a schedule for Kristine to obtain additional visitation. The first step required her to attend a "[90-]day inpatient treatment program at Hazelden Betty Ford, or another agreed upon or court approved [inpatient] treatment program" and submit to urinalysis (UA) three times a week for six months after completing the inpatient program. If Kristine had no missed, dilute, or positive UAs for 90 days, she would receive an additional visit with all of her children each week and a few additional hours with her youngest child. The PPO then also allowed Kristine to ask the court to remove the requirement that her visits be supervised as well as the restriction prohibiting her from driving her children. Six months after her return from the 90-day inpatient treatment program, the UA requirement would decrease from three to two random drug tests a week if Kristine had not had any positive, dilute, or missed tests.

The order also provided that if Kristine went 270 days after completing inpatient treatment without any positive or missed UAs, she would be allowed an overnight visit once a week with her children. And if, after inpatient treatment, she went a year without missing UA appointments or testing positive for drugs or alcohol, the UA requirement would be removed entirely and she would be allowed an additional overnight visit. Finally, if Kristine documented two years of sobriety after attending the inpatient program, participated in outpatient treatment and mental health counseling, and expanded her visitation with the children to include overnights, then the PPO allowed her to move for modified custody.

**B.   Motions To Modify Visitation And Custody**

In March 2018 Kristine filed several motions to modify the visitation requirements. The court denied the motions, noting that the PPO was "very detailed" and allowed Kristine to "gradually increase [her visitation] if she met certain requirements." The court observed that Kristine had not met the first requirement of

completing a 90-day inpatient substance abuse treatment program. The court found that the PPO provided a schedule that was in the children's best interests and "took into consideration" Kristine's complicated substance abuse and mental health issues. Despite Kristine's "representations that she [was] doing fine," the court explicitly rejected the idea of setting the PPO aside, noting Kristine's well-documented history of dishonesty with the court. The court required Kristine to "follow the steps outlined in the [PPO] if she wants more time and freedom with her children."

In April 2019 Kristine again moved to modify custody "to equally share physical and legal custody of the children." She conceded that she had not completed the 90-day inpatient program but argued that her circumstances had changed because she had been sober since 2017 and had completed several outpatient treatment programs. Kristine claimed that it was no longer possible for her to enter inpatient treatment as a result. And she alleged that David had undermined her relationship with her children and had recently committed acts of domestic violence against her. Kristine also argued that the PPO was an invalid contract because it was impracticable. David opposed, arguing that Kristine had not demonstrated a substantial change in circumstances, and he cross-moved to enforce the PPO because Kristine had failed to attend the required 90-day inpatient program.

The superior court scheduled an evidentiary hearing after issuing an order limiting the scope of the evidence it would allow and consider. Based on the parties' filings, the court concluded that even if it were true that Kristine had been sober since 2017, her sobriety did not amount to a change in circumstances under the terms of the parenting plan. The court advised the parties that "[g]iven the extensive litigation, . . . the fact that both parties had skilled counsel, and the serious nature of [Kristine's] lengthy addiction," it would "not lightly choose to vary from the comprehensive PPO." The superior court also allowed Kristine to present evidence regarding domestic violence

she alleged David had committed that could show a change in circumstances and whether the PPO's limitation on potential supervisors was reasonable.

The evidentiary hearing was held in June 2020 and largely focused on whether it was impossible for Kristine to attend a 90-day inpatient treatment program. Kristine's psychiatrist testified that she had been sober for "at least two years," that he did not think it would be "particularly productive for her to go to a residential treatment facility," and that there would be a "variety of down[]sides" to attending one. David called the director of a substance abuse treatment facility as a witness; the director testified that the facility's inpatient program would accept Kristine based on her history of substance abuse issues and the terms of the PPO.

Kristine filed another motion to modify visitation shortly after the evidentiary hearing and before the superior court had made its decision. She urged the court to allow her to drive her children and have unsupervised and overnight visits, regardless of the PPO requirement that she first attend a 90-day treatment program. David opposed and renewed his motion to enforce the PPO. The court held five more days of evidentiary hearing and admitted testimony and documentation that Kristine had recently tested positive for alcohol in amounts that were consistent with heavy drinking.

The superior court concluded that Kristine had not met "her burden of proving a substantial change of circumstances." Observing that the PPO was designed to address Kristine's addiction as well as her dishonesty with the court and manipulation of test results, the court concluded that her recent test results demonstrated that those circumstances had not changed.

The court also found that it was not "impossible or impracticable" for Kristine to attend a 90-day inpatient treatment program, and her resistance to attending the program that offered to accept her showed that she "continued to make illogical decisions relating to the . . . children." The court also noted the "extraordinary amount

of money, time, and effort" Kristine spent "avoiding the tasks that would have reunified her with her children." And the court found that Kristine's recent positive tests, given her "history of manipulation and dishonesty," demonstrated "a pattern of behavior that ha[d] remained consistent for years." Because she had not demonstrated a change in circumstances, the court denied Kristine's motions and granted David's motions to enforce the PPO.

Kristine appeals the superior court's order limiting the scope of the evidentiary hearings and its order denying her motions to modify custody and visitation.

## III. STANDARD OF REVIEW

"We review a trial court's child custody modification decision deferentially, reversing the decision only when the lower court abused its discretion or when its controlling findings of fact were clearly erroneous."[1] "The court's broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[2] "The trial court abuses its discretion 'where it considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others.' "[3] "Factual findings are clearly erroneous if a review of the record leaves us 'with the definite and firm conviction that the superior court has made a mistake.' "[4] And "[w]e give

---

[1] *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (quoting *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008)).

[2] *Id.*

[3] *Littleton v. Banks*, 192 P.3d 154, 157 (Alaska 2008) (quoting *Thomas v. Thomas*, 171 P.3d 98, 102 (Alaska 2007)).

[4] *Collier*, 377 P.3d at 20 (quoting *William P. v. Taunya P.*, 258 P.3d 812, 814 (continued...)

'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Limiting The Scope Of The Evidentiary Hearing.

Kristine contends that the superior court erred by limiting the scope of the June 2020 evidentiary hearing, arguing that the court had an "obligation" to allow evidence regarding the validity of the PPO's terms when it considered her motion to modify custody. But before granting a motion to modify, the superior court must determine whether the moving parent has shown that "changed circumstances" require modification.[6] And we have previously held that "a court considering a request for custody modification must give deference to the findings made in the original custody determination."[7] Based on the findings the court had made when the PPO was entered, the court concluded that the only facts Kristine had alleged that could amount to a change in circumstances were that David had committed domestic violence and that it was impossible for her to attend a 90-day inpatient treatment program. The court therefore limited the scope of the evidentiary hearings to those topics and the related consideration

---

[4]  (...continued) (Alaska 2011)).

[5]  *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[6]  Alaska Statute 25.20.110(a) provides that "[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."

[7]  *Gratrix v. Gratrix*, 652 P.2d 76, 81 (Alaska 1982).

of the PPO's limitation on acceptable supervisors. The court appropriately deferred to the findings made when the custody order was entered but also allowed Kristine the opportunity to demonstrate a dispositive change in circumstances.

Kristine claims that the superior court had a duty to "inquire into the terms" of the PPO when considering a motion to modify custody, but we do not require such inquiries. The cases on which Kristine relies state only that the court must exercise reasonable discretion,[8] not that it must exercise that discretion to "inquire into the terms" of a validly executed custody agreement whenever it considers a motion to modify custody. In fact, the court's exercise of discretion must begin by "giv[ing] deference to the findings made in the original custody determination" to avoid "reweighing . . . evidence which was presented at the original custody hearing."[9] This requirement is "intended to discourage continual relitigation of custody decisions" and is motivated by "the judicial assumption that finality and certainty in custody matters are critical to [a] child's emotional welfare."[10] The superior court had an obligation to first determine whether Kristine demonstrated a change in circumstances before it could inquire into the terms of the PPO or the court's prior findings. The superior court appropriately limited the evidentiary hearing to evidence relating to whether any of the potential circumstances

---

[8]  *See, e.g., Cora v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 461 P.3d 1265, 1287 n. 98 (Alaska 2020) ("If a trial court has not exercised its discretion, we cannot review for abuse of discretion."); *Haines v. Cox*, 182 P.3d 1140, 1143 n.10 (Alaska 2008) ("Whether the trial court erred by allegedly misconceiving the scope of its discretion or thought that it had no discretion to decide a dispute is a legal question."); *Cano v. Municipality of Anchorage*, 627 P.2d 660, 663 (Alaska App. 1981) ("In the exercise of sound legal discretion, a court must consider the alternatives available to it and choose among them.").

[9]  *Gratrix*, 652 P.2d at 81.

[10]  *Id.* at 82-83.

that could justify modifying the PPO had changed.

**B.     The Superior Court Did Not Err By Denying Kristine's Motions To Modify Custody And Visitation.**

Kristine argues that the superior court erred when it denied her motions to modify custody and visitation even though she had not met the terms of the PPO. Despite the requirement that "a court considering a request for custody modification must give deference to the findings made in the original custody determination,"[11] Kristine argues that the superior court gave too much weight to the original factual findings when it considered her motions. But we have repeatedly held that the parent seeking to modify custody must show a substantial change in circumstances and "the change '*must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order* that the party seeks to modify.' "[12] The court considered Kristine's allegations relative to the facts and circumstances described in the findings relative to the PPO and found that the circumstances had not changed.

Kristine also argues that the superior court erred when it found that attending a 90-day inpatient treatment program was not impossible and that it was therefore not impracticable for Kristine to comply with the PPO. The court found that the evidence showed that if Kristine had been honest with the evaluators regarding her drug and alcohol use, programs which had previously found her ineligible for their

---

[11]     *Id.* at 81.

[12]     *Collier v. Harris*, 261 P.3d 397, 403 (Alaska 2011) (emphasis added) (footnotes omitted); *see also Collier v. Harris*, 377 P.3d 15, 22 n. 27 (Alaska 2016) ("The superior court's order correctly stated that '[w]hether there is a change in circumstances is measured "relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify" ' and identified the dates of the prior orders from which it had to measure changes relevant to . . . custody." (first alteration in original)).

treatments would likely have admitted her. The court also found that other facilities would admit her based on her history of addiction and the PPO. The court's finding that it was "not impossible or impracticable" for Kristine to attend inpatient treatment is a factual finding that we review for clear error.[13] Because the finding is supported by the testimony and evidence presented at the evidentiary hearing, it is not clearly erroneous.

Lastly, Kristine argues that the superior court erred by denying her motions to modify custody because it failed to consider the best interests of her children. But Kristine was required first to demonstrate a change of circumstances before the court was authorized to inquire into whether the existing custody arrangement was in the children's best interests. "[M]odifying an existing custody order entails a two-step process: the parent seeking modification must establish a significant change in circumstances affecting the child's best interests; *only if* the parent makes this showing does the court proceed to determine whether modification is in the best interests of the child."[14] Because Kristine failed to demonstrate a significant change in circumstances, the court was not required to revisit the children's best interests.

## V.    CONCLUSION

The superior court's orders are AFFIRMED.[15]

---

[13]    *See Collier*, 377 P.3d at 20.

[14]    *Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005) (emphasis added).

[15]    David asks us to order the superior court to dismiss any future motions to modify custody or visitation from Kristine until she has met the requirements of the PPO. But he neither cites any authority nor indicates whether he has asked the superior court to enter such an order. We therefore decline to consider his request. *See Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1173 (Alaska 1998) (holding that argument briefed in cursory manner and without citing supporting authority is considered abandoned).

David also asks that we award him attorney's fees. But we decline to

(continued...)